UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRADLEY D. WARNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-00096-JPH-CSW |
| | ) |
| ANDERSON HOUSING AUTHORITY, | ) |
| LORRAINE RICHARDSON, | ) |
| MARY DAVIS, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Plaintiff Bradley Warner lived in public housing managed by the Anderson Housing Authority (AHA) until he was notified that the AHA had terminated his lease. He moved out as directed by the AHA and then requested a hearing with the AHA for wrongful eviction. The AHA denied his request. Mr. Warner then sued under 42 U.S.C. § 1983 alleging equal protection and due process violations under the Fourteenth Amendment against the AHA and two of its employees. Defendants moved to dismiss the claims and for the reasons below, that motion is **GRANTED in part and DENIED in part.** Dkt. [20].

**I.
Facts and Background**

Because the defendants have moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

1

In June 2021, Mr. Warner complained about noise from an upstairs neighbor to defendant Mary Davis, an AHA manager. Dkt. 9 at 6. Mr. Warner accompanied Ms. Davis to the neighbor's apartment, and she asked the tenants to keep the noise down. Then Mr. Warner returned home. *Id.* Later, after leaving his apartment, an officer arrested him. *Id.*

According to the affidavit of probable cause attached to Mr. Warner's amended complaint, Ms. Davis had "been having trouble all day" with Mr. Warner because he was "harassing tenants." Dkt. 9-2 at 1. Ms. Davis told officers that Mr. Warner had entered his neighbor's apartment and argued with the tenant until Ms. Davis intervened. *Id.* After the tenant corroborated this story, the officers received a warrant and arrested Mr. Warner for Residential Entry. *Id.*

After being released from jail, Mr. Warner found an "Eviction Notice" on his apartment door. Dkts. 9 at 7; 21-1 (copy of notice).[1]

---

[1] Mr. Warner states that an "Eviction Notice" from the AHA was taped to his door. Dkt. 9 at 7. Defendants filed a lease termination notice, dated June 10, 2010 [sic] and signed by Mary Davis, dkt. 21-1. At the motion to dismiss stage a district court can consider "the complaint itself, documents that are attached to the complaint, [and] documents that are central to the complaint and referred to in it." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The initial notice is referred to in and central to the complaint, so the Court will consider it in ruling on the 12(b)(6) motion.

> Dear Bradley;
>
> Please be advised, this letter represents the notice of violation of lease with intent to terminate. We are terminating your lease as a Low-Rent Public Housing participant for the property located at 2211 Fulton St., Apt. E, Anderson, Indiana effective June 16, 2021. You are hereby notified that 72hours after servicing this notice excluding the weekend, your lease at this address, 2211 Fulton St., Apt. E, is terminated.
>
> The following are violation(s) of your lease according to AHA Policy and HUD Regulations (24 CFR 966) as cited below:
>
> Criminal activity by Tenant, household member, guest, or other person under Tenant's control, including criminal activity that threatens the health, safety or right to peaceful enjoyment of the Authority's public housing premises by other residents or employees, or any drug-related criminal activity on or off the premises.
>
> You are hereby notified that seventy-two (72) hours after service of this notice, excluding the weekend, your lease at the aforementioned address is terminated. Within that time, you are required to peacefully vacate and surrender possession of the unit. If you fail to do so, legal proceeding will be filed against you to recover possession of the unit, damages and legal fees. This notice does not cancel your obligation to pay the rent owed until the date of termination.
>
> Let this also serve as notice that representative from the City of Anderson Housing Authority will be conducting a move-out inspection of the unit after June 16, 2021. Please have all household furniture and personal items removed from the unit by the aforementioned date.
>
> During the move-out inspection, we will be assessing any damage charged to the tenant which may result in forfeiture of the security deposit. At this time, we will also collect all keys that were previously issued to the household. If you have any questions regarding this matter, please contact me at 765-641-2620 Ext. 419.
>
> Sincerely
>
> Mary Davis
> Public Housing Manager
> Anderson Housing Authority

Mr. Warner followed the notice and vacated the apartment. *Id.* Later, he requested a hearing with the AHA. *Id.* Defendant Lorraine Richardson, an AHA manager, denied the hearing. She believed that Mr. Warner had not been evicted but had vacated the apartment after having received a notice terminating his lease "due to program violations," namely criminal activity. Dkt. 9-1.

Mr. Warner filed suit alleging equal protection and due process violations under the Fourteenth Amendment. Dkt. 1; dkt. 9 at 9 (amended complaint). He seeks the return of his one-bedroom Section 8 voucher and compensation for the mental anguish he experienced. Defendants have filed a motion to

dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 20.

## II.
## Legal Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(1) to dismiss claims for lack of subject-matter jurisdiction. When faced with a 12(b)(1) motion, the plaintiff "bears the burden of establishing that the jurisdictional requirements have been met." *Center for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). The Court accepts as true the well-pleaded factual allegations, drawing all reasonable inferences in the plaintiff's favor. *Id.*

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a plausible claim "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary judgment stage." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir.

2021).  When ruling on 12(b)(6) motion, the Court "accept[s] the well-pleaded facts in the complaint as true," *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011), and gives the plaintiff "the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (cleaned up).  However, it will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim."  *McCauley*, 671 F.3d at 616.

## III. Analysis

Defendants have moved to dismiss Mr. Warner's equal protection claim under Rule 12(b)(6) and his procedural due process claim under Rule 12(b)(1) and 12(b)(6).

### A. Equal Protection

Mr. Warner brings an equal protection claim based on gender discrimination.[2]  Dkt. 9 at 8–9.  Defendants argue that Mr. Warner failed to state an equal protection claim on gender discrimination grounds because he fails to allege facts showing Defendants acted with discriminatory intent.  Dkt. 21 at 9–12.  Mr. Warner's complaint mentions the words "Gender

---

[2] Mr. Warner's original complaint alleged an equal protection violation based on the AHA treating other tenants with criminal misdemeanors differently than him.  Dkt. 1 at 7; *see* dkt. 8 at 3 (initial screening order discussing claim).  Mr. Warner's amended complaint reframed the issue as gender discrimination.  Dkt. 9 at 8–9. The screening order that followed did not specifically discuss Mr. Warner's new basis for an equal protection claim, and because "an amended complaint supersedes an original complaint and renders the original complaint void," *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004), only the gender discrimination claim will be considered.

5

Discrimination." *Id.* at 11.  Mr. Warner responds that Defendants "continuously denied me rights."  Dkt. 25 at 11; *see* dkt. 28 at 10–11.

An equal protection claim requires an allegation that defendants' actions "were motivated by a discriminatory purpose."  *Chavez v. Illinois State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001).  Mr. Warner has not alleged any facts that Defendants acted with discriminatory purpose.  His amended complaint includes the conclusory allegation that he "find[s] it Gender Discrimination" with no other support.  Dkt. 9 at 9.  At the pleading stage, a plaintiff must provide "some specific facts" when alleging an equal protection violation and Mr. Warner has not done so.  *McCauley*, 671 F.3d at 616; *see A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, 498 F. App'x 620, 623 (7th Cir. 2012) (affirming dismissal of plaintiff's equal protection claim based only on "conclusory allegations").  Therefore, his equal protection claim is **DISMISSED with prejudice.**

### B. Procedural Due Process

Defendants argue that Mr. Warner's procedural due process claim should be dismissed under Rules 12(b)(1) and 12(b)(6).  Since a Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction, it must be addressed as a threshold matter.  *See Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998) ("Subject matter jurisdiction is the first question in every case.").

### 1. Rule 12(b)(1)

Defendants argue that Mr. Warner's procedural due process claim is moot because Mr. Warner: (1) voluntarily vacated his unit before requesting a

6

hearing and (2) later admitted the criminal activity that led to his lease termination when he entered a guilty plea in the residential entry case.[3]

"A case becomes moot when a party's legally cognizable interest in the litigation ceases to exist." *Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008). When a plaintiff "seeks monetary damages, his case is not moot even if the underlying misconduct that caused the injury has ceased." *Brown v. Bartholomew Consol. Sch. Corp.*, 441 F.3d 588, 596 (7th Cir. 2006).

Here, Mr. Warner seeks, in part, "to be financially compensated for the "mental anguish" caused by his lease termination. Dkt. 9 at 5. So while the "underlying misconduct" concluded when he vacated his unit, the possibility of damages means that this case is not moot. *See Brown*, 441 F.3d at 596; *see also* Carey *v. Piphus*, 435 U.S. 247 (1978) (allowing for the recovery of damages for the "emotional distress caused by the denial of procedural due process itself").

Second, Mr. Warner's guilty plea does not render this case moot because it is uncertain what would have happened at the hearing if he was given one. Defendants argue that because Mr. Warner pled guilty to engaging in criminal activity, a hearing would do nothing to change the outcome—his lease would

---

[3] Defendants ask the Court to take judicial notice of Mr. Warner's guilty plea, dkt. 21-2, without converting this to a motion for summary judgment, dkt. 21 at 3 n.3. A district court can take judicial notice of a guilty plea, a matter of public record, without converting a Rule 12 motion to a motion for summary judgment, so long as it is "not subject to reasonable dispute and . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080, (7th Cir. 1997). The guilty plea and state court docket provided by Defendants meet that standard. The Court takes judicial notice of these documents.

have remained terminated based on his plea. Dkt. 21 at 7. But Defendants' argument relies on assumptions that have not been proven—that the hearing would have resulted in Mr. Warner's lease termination being upheld, that the factfinder at the hearing would be bound by the plea, and that the only question at the hearing would be whether Mr. Warner engaged in criminal activity.

Moreover, Defendants' cited cases in support of this argument—*Tollett v. Henderson*, 411 U.S. 258 (1973), and *Brady v. United States*, 397 U.S. 742 (1970)—are different because those cases considered constitutional rights directly related to the criminal proceedings that precede a guilty plea. Here, Mr. Warner's due process claim does not relate to his guilty plea, but instead to the alleged deprivation of due process in his lease termination. It is not moot.

### 2. Rule 12(b)(6)

Mr. Warner has sued three defendants: the AHA, Lorraine Richardson, and Mary Davis.

#### a. AHA

Defendants argue that the AHA cannot be liable because Mr. Warner has failed to allege the deprivation of a federal right or the involvement of an express AHA policy causing the deprivation. Dkt. 21 at 14–15.

Municipalities can be held liable under § 1983 only if a "municipal policy or custom caused the constitutional injury." *Leatherman v. Tarrant Cnty. Narcotics Intel. and Coordination Unit*, 507 U.S. 163, 164 (1993). To establish

an official policy or custom to support a *Monell*[4] claim alleging municipal liability, a plaintiff must allege that "(1) the [municipality] had an express policy that, when enforced, causes a constitutional deprivation; (2) the [municipality] had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority." *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

Mr. Warner has not alleged that the AHA had an express policy that caused a constitutional deprivation, nor does he indicate any widespread practices used by the AHA. *See* dkt. 9 at 6–10; *McCauley*, 671 F.3d at 615 (ruling that to avoid dismissal the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable"). Therefore, Mr. Warner's claim can only survive against the AHA if the injury was caused by a "final policymaker."

Officials with final policymaking authority possess "responsibility for making law or setting policy." *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004) (internal quotations omitted). "The mere authority to implement pre-existing rules is not the authority to set the policy." *Id.* The plaintiff's complaint "must contain allegations sufficient to support the conclusion that his constitutional injury was caused by an individual with final policymaking authority." *Baskin v. City of Des Plaines*, 138 F.3d 701, 705 (7th Cir. 1998).

---

[4] *Monell v. Dep't of Soc. Servs. Of City of N.Y.*, 436 U.S. 658 (1978).

Mr. Warner has not alleged that Ms. Richardson, Ms. Davis, or any other AHA official had final policymaking authority. He mentions that an AHA official put the eviction notice on his door, dkt. 25 at 13, but this does not allege that whoever put it there a final policymaker. Mr. Warner has not made any allegations as to how decisions were made at AHA, cited any state or local law discussing who has authority over lease termination matters, or mentioned any policies applied by AHA officials. *See Killinger*, 389 F.3d at 772 ("Plaintiff's municipal liability theory fails because he has not identified any state or local positive law . . . that grants [the Defendant] authority to adopt rules that are relevant to this case."). Therefore, the claims against the Anderson Housing Authority are **DISMISSED with prejudice**.[5]

### b. Ms. Davis and Ms. Richardson

Defendants argue that Mr. Warner's procedural due process claim against Ms. Davis and Ms. Richardson must be dismissed because: (1) he was not deprived a property interest, (2) he fails to allege sufficient facts to sustain claims for individual liability under § 1983, and (3) the defendants are shielded by qualified immunity.

---

[5] Defendants also argue that Ms. Davis and Ms. Richardson cannot be liable in their official capacity. Dkt. 21 at 12. Local government officials cannot be sued in their official capacity, instead governmental units can be sued, and Mr. Warner has done just that by naming the AHA in this suit. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (foreclosing official capacity claims against government officials because local government units can be sued directly). And the Court has dismissed the claims against the AHA. Therefore, Mr. Warner's due process claim against Ms. Richardson and Ms. Davis can only proceed against them in their individual capacities. This will be discussed below.

### i. Property interest

Defendants argue that because Mr. Warner was served with a lease termination notice and then voluntarily vacated his unit, no actual eviction or property interest deprivation occurred. Dkt. 21 at 8. Mr. Warner responds that he should have been given a hearing before being deprived of his property interest in his public housing apartment unit. Dkt. 25 at 10.

"As a general matter, a procedural due process claim requires a plaintiff to show that state actors deprived him of a protected property interest and that he did not receive adequate process when he was deprived of that interest." *Adams v. Reagle*, 91 F.4th 880, 889 (7th Cir. 2024). "The fundamental requisite of due process of law is the opportunity to be heard." *Greene v. Lindsey*, 456 U.S. 444, 449 (1982). In the public housing context, the Supreme Court has said that a tenant has a "property interest in their leasehold interest," and has held that "an effort to deprive a tenant of such a right without proper notice" violates due process. *See Dep't of Hous. and Urb. Dev. v. Rucker*, 535 U.S. 125, 135 (2002) (citing *Greene v. Lindsey*, 456 U.S. 444 (1982).

Here, the notice did not inform Mr. Warner of an opportunity to be heard. Though Defendants argue he had that opportunity in state court, the notice does not say that and there otherwise is no evidence that Mr. Warner was informed that he had an opportunity to be heard. The case Defendants rely on in support of this argument, *A.B. ex rel. Kehoe v. Housing Auth. of S. Bend*, No. 3:11-cv-163, 2011 WL 4005987, at *8 (N.D. Ind. Sept. 8, 2011), found that

11

"while [the tenant] was not given a . . . hearing, she was given an opportunity to contest her eviction with counsel in Indiana state court" prior to being forced to give up her property. Here, the notice provided to Mr. Warner said only that his lease would be terminated in 72 hours, and that he must vacate and surrender possession of the unit in that time. Dkt. 21-1 at 2.

Defendants also argue that when a landlord serves a tenant with a lease termination notice, takes no further action, and then the tenant voluntarily vacates his unit, no "actual eviction or property interest deprivation has occurred." Dkt. 21 at 8. Even so, Defendants have not shown that a lease termination notice cannot constitute a deprivation of property that triggers due process protections. The two cases they cite in support of their argument do not answer this question. In *Cox v. Drake*, the Sixth Circuit, applying Ohio law, found that a tenant that received "Notice to Vacate the premises" from her landlord after a lengthy dispute, and then left voluntarily did so "prior to a hearing" and had not been evicted because no forcible entry was required. In *Bowers v. Sells*, an Indiana appellate court noted that "a mere notice to quit, followed by vacation of the premises by the tenant" did not constitute a constructive eviction. 123 N.E.2d 194, 197 (Ind. Ct. App. 1954).

*Bowers* does not answer whether due process required that Mr. Warner be informed of and provided an opportunity to be heard, and *Cox*, which is not binding precedent, applied Ohio law, and does not explain whether the notice to plaintiff informed her of the right to a hearing, a key issue here. Indeed, the closest case to this one cited by Defendants, *Kehoe*, found no due process

12

violation because the tenant had state court proceedings at their disposal. Defendants have not shown that the same was true for Mr. Warner.

### ii. Individual Liability

To be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Chavez*, 251 F.3d at 651. A defendant has sufficient personal responsibility if they "directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Id.* at 652. A "causal connection or affirmative link between the action complained about and the official sued is necessary." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

Defendants argue Mr. Warner has not alleged how each individual defendant personally deprived him of a constitutional right. Dkt. 21 at 6. In his Complaint, Mr. Warner alleges he brought a noise complaint to Ms. Davis's attention and went with her to his neighbor's unit to investigate. Dkt. 9 at 6. Later, he found an "Eviction Notice" on his door. Dkt. 9 at 7. Ms. Davis signed the notice ordering Mr. Warner to vacate the unit. Dkt. 21-1 at 2. That signature connected her to the violation at issue and is enough personal involvement to survive a motion to dismiss, given Ms. Davis was present for the altercation that led to the termination notice and signed it.

The same goes for Ms. Richardson. Mr. Warner attached to his Complaint the letter denying his request for a hearing after he vacated his unit. Dkt. 9-1. Ms. Richardson signed this letter denying a hearing, linking her to the alleged procedural due process violation.

13

### iii. Qualified Immunity

Defendants argue Ms. Davis and Ms. Richardson are entitled to qualified immunity on Mr. Warner's procedural due process claim because: (1) qualified immunity applies where the individual defendant was only alleged to have been tangentially related to the decision at issue, and (2) their actions were "objectively reasonable." Dkt. 21 at 13–14.

At the motion to dismiss stage, courts "often cannot tell from a complaint whether qualified immunity applies" and thus it is "rarely" the time to decide qualified immunity, which is a fact-driven inquiry. *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022); *see also Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."). Here, the factual record regarding the extent of Ms. Davis and Ms. Richardson's involvement with the termination proceedings is undeveloped. *See Triad Assoc., Inc. v. Robinson*, 10 F.3d 492, 495 (7th Cir. 1993) (describing how facts are viewed when qualified immunity is raised at the motion to dismiss stage). Indeed, the case cited by Defendants in support of their argument, *Muhammad v. Louis*, No. 15-cv-41, 2018 WL 3321329 (W.D. Wis. July 5, 2018), granted a qualified immunity defense at summary judgment, not on a motion to dismiss.

Giving him the "benefit of imagination" as the Court must, *see Chapman*, 875 F.3d at 848, the Court finds that Mr. Warner has set forth "enough details about the subject-matter of the case to present a story that holds together," *Bilek*, 8 F.4th at 586. At this phase of the proceedings, that is all that's

14

required. Therefore, Defendants' motion to dismiss Mr. Warner's procedural due process claims against Ms. Davis and Ms. Richardson is **denied.** *See C.B. v. Board of Educ. of City of Chicago, Dist. 299*, 624 F. Supp. 3d 898, 917 (N.D. Ill. 2022) ("Discovery may show [that qualified immunity is appropriate. For now, at the pleadings stage, it is too early to tell. . . . Defendants are not precluded, however, from moving again for qualified immunity at a later juncture.").

## IV.
## Mr. Warner's Cross Claim

Mr. Warner filed a "Cross Claim Motion." Dkt. [26]. This motion reiterates claims against the three named Defendants in this action. A crossclaim is a claim filed against a co-party. *See* Fed. R. Civ. P. 13(g). Mr. Warner is the only plaintiff in this action and cannot bring a crossclaim. Therefore, this Motion is **DENIED.**

## V.
## Conclusion

Mr. Warner's "Cross Claim Motion" is **DENIED**. Dkt. [26]. Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. Dkt. [20]. Mr. Warner's equal protection claim is **dismissed with prejudice**. Mr. Warner's procedural due process claim against the AHA and against Ms. Davis and Ms. Richardson in their official capacities is **dismissed with prejudice**. Mr. Warner's procedural due process claim against Ms. Davis and Ms. Richardson in their individual capacities will move forward. The clerk is **directed** to remove the AHA as a defendant.

**SO ORDERED.**

Date: 3/20/2024

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

BRADLEY D. WARNER
3618 Dogwood Dr.
Anderson, IN 46011

All electronically registered counsel